597 A.2d 734

**PLUMSTEAD TOWNSHIP CIVIC ASSOCIATION, Bruce A. Curtis and Alyce Curtis and John D. Trainer and Sandra T. Trainer, Petitioners,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1991.

Decided Sept. 23, 1991.

John A. VanLuvanee, for petitioners.

William Gerlach and John R. McKiastry, for respondent.

Before COLINS and BYER, JJ., and NARICK, Senior Judge.

BYER, Judge.

This case presents the question of whether subsection 315(i) of the Pennsylvania Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. § 691.315(i), applies exclusively to coal mining operations or to both coal and noncoal mining operations.

A surface mine operator applied to the Department of Environmental Resources (DER) for a permit to mine argillite, a noncoal mineral, in Plumstead Township, Bucks County.[1] In response to the permit application, the Plumstead Township Civic Association, Bruce A. and Alyce Curtis and John D. and Sandra T. Trainer, (collectively, association) filed a petition with the DER to designate the area unsuitable for mining operations pursuant to subsection 315(i) of the Clean Streams Law.[2] The DER denied the association's petition, declaring that, absent evidence of coal beneath the land at issue, it lacked the authority to declare the land unsuitable for noncoal surface mining under the Clean Streams Law, 35 P.S. §§ 691.1–691.1001, the Noncoal Surface Mining Conservation and Reclamation Act, Act of

1. The operator's permit application remains pending.

2. Subsection 315(i) of the law provides that:
   (i) Pursuant to the procedures set forth in subsection (m), the department may designate an area as unsuitable for certain types of mining operations if such operations will:
   (1) be incompatible with existing State or local land use plans or programs;  .
   (2) affect fragile or historic lands in which such operations could result in significant damage to important historic, cultural. scientific and esthetic values and natural systems;
   (3) affect renewable resource lands in which such operations could result in a substantial loss or reduction of long-range productivity of water supply or of food or fiber products, and such lands to include aquifers and aquifer recharge areas;  or
   (4) affect natural hazard lands in which such operations could substantially endanger life and property, such lands to include areas subject to frequent flooding and areas of unstable geology.

December 19, 1984, P.L. 1093, *as amended,* 52 P.S. §§ 3301–3326 (Noncoal Act), and the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.31 (SMCRA).[3]

The association appealed to the Environmental Hearing Board (EHB). DER moved for summary judgment,[4] claiming that its authority to declare an area unsuitable for mining under section 315 of the Clean Streams Law is limited to areas where identified coal resources exist.[5]

EHB granted DER's motion for summary judgment and dismissed the association's petition, explaining that subsection 315(i) applies *only* to coal mining operations because the General Assembly intended that it apply only to surface coal mine operations and even if this intent is not apparent, that the rules of statutory construction require such a result.

EHB Chairperson Maxine Woelfling, in a thoughtful opinion, explained that subsection 315(i), added to the Clean

3. The 1980 amendments to SMCRA included similar provisions for designating land unsuitable for mining. SMCRA, at that time, did not discriminate between coal and noncoal. When the Noncoal Act became effective, SMCRA was amended so that it applied only to coal. The Noncoal Act did not include any provisions for designating land unsuitable for mining. However, sections 315(h)–(*o*) of the Clean Streams Law had provisions for designating land unsuitable for "surface mining."

Regulations for declaring coal mining lands unsuitable for mining are set forth in 25 Pa.Code §§ 86.101–86.130. The noncoal regulations in 25 Pa.Code Chapter 77 have no provisions for declaring noncoal mining lands unsuitable for mining.

4. The EHB may grant summary judgment when the pleadings, depositions, answers to interrogatories and admissions show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Summerhill Borough v. Department of Environmental Resources,* 34 Pa.Commonwealth Ct. 574, 383 A.2d 1320 (1978).

5. The EHB held in *Palisades Residents in Defense of the Environment v. Department of Environmental Resources,* 86 EHB 366–W (filed September 5, 1990), that an area could be designated as unsuitable for mining under section 4(b) of the Noncoal Act, 52 P.S. § 3304(b), only where there is coal above the non-coal mineral which will be removed incidental to the removal of the non-coal mineral. Section 315 of the Clean Streams Law was not at issue in that appeal.

Streams Law by Act 157 of 1980, demonstrated the General Assembly's intent to amend the law in order for the Commonwealth to secure primacy over surface coal mining under the Federal Surface Mining Control and Reclamation Act, P.L. No. 95–87, 91 Stat. 445, 30 U.S.C. §§ 1201–1328 (1982) (federal SMCRA). Section 503 of federal SMCRA, 30 U.S.C. § 1253, requires states to demonstrate that their programs to regulate surface coal mining had the ability to effectuate the purpose of federal SMCRA through the:

(5) establishment of a process for the designation of areas as unsuitable for surface coal mining in accordance with section 522 [of federal SMCRA] provided that the designation of federal lands unsuitable for mining shall be performed exclusively by the Secretary after consultation with the State;....

30 U.S.C. § 1253(5).

Chairperson Woelfling also compared the language of subsection 315(h)–(*o*) of the Clean Streams Law and subsections 522(a)(2)–(6) and 522(c)–(e) of federal SMCRA, finding that "[b]ut for the numbering systems used for the subsections and minor variations in wording, the state and federal provisions are identical." EHB opinion at 5.

Because section 522 of federal SMCRA applies only to surface coal mining and because the General Assembly was satisfying primacy obligations in amending the Clean Streams Law, the EHB reasoned there was no intent that subsection 315(i) apply to all mining.

The EHB also stated that in construing subsection 315(i) *in pari materia* with the other subsections of 315, that it is obvious that subsection 315(i) only applies to coal-bearing lands. The EHB held that because parts of statutes are *in pari materia* where they relate to the same things or same classes of things, 1 Pa.C.S. § 1932, and since subsections 315(h)–(*o* ) relate to the same thing, i.e. designation of areas unsuitable for mining operations, they must be construed to apply to areas with coal only.

On appeal,[6] the association argues that the DER has the authority to declare an area unsuitable for *any type* of mining operation—coal or noncoal—provided the proposed operation meets the criteria of subsection 315(i)(1)–(4) of the Clean Streams Law. It further contends that subsection 315(i) of the Clean Streams Law is clear on its face, and if the legislature had intended this subsection to pertain only to coal mining operations, it would have expressly added such a limitation. Therefore, because subsection 315(i) contains no limitations, it applies to all types of mining operations.

DER disagrees because the definition of "surface mining" in subsection 315(h) incorporates the definition of "surface mining" in section 3 of SMCRA, 52 P.S. § 1396.3. Section 3 of SMCRA states that surface mining "shall not include ... the extraction of minerals (other than anthracite and bituminous coal) ...," and thus, subsection 315(h), by incorporating this definition of surface mining, also applies only to the surface mining of coal. The DER also asserts that because subsections 315(h)–(*o*) are to be read together, the definition of surface mining in subsection 315(h) which it asserts applies only to coal, also applies to subsections 315(i)–(*o*) as well.[7]

If this application were consistent in all of section 315, i.e., if subsections 315(a)–(g) applied *only* to coal mining, we might agree; however, the DER, in its memorandum of law

6. Our scope of review is limited to determining violations of constitutional rights, errors of law, violations of agency practice and procedure and whether findings of fact are unsupported by substantial evidence. 2 Pa.C.S. § 704.

7. This case is a little unusual, in the sense that DER is taking a position of regulatory restraint, arguing that it does not have as much regulatory power as it would appear to have under the plain meaning of the statute, while the association contends that DER has greater regulatory power than DER is willing to admit. As Judge Weis, writing for the Third Circuit, recently observed, "although not unknown, it is a somewhat curious situation when the agency charged with enforcement argues for less authority and its opponent would foist unwanted power on the government." *Stretton v. Disciplinary Board of the Supreme Court of Pennsylvania,* 944 F.2d 137, 143 (3d Cir.1991).

in support of its motion for summary judgment, conceded that "[subsections] 315(a)–(g) and other provisions of the Clean Streams Law apply to *all* mining, noncoal as well as coal." (27a) (emphasis in original).

"Mine" is defined in section 1 of the Clean Streams Law as "any coal mine, clay mine *or other facility from which minerals are extracted from the earth....*" (emphasis added). Section 1 also requires that this definition be construed as written, unless the context of a subsection "clearly indicates otherwise."

Section 315 functions to regulate the operation of mines and the discharge from such mines into the waters of the Commonwealth. Subsection 315(a) mandates that "[n]o person or municipality shall operate *a mine* or allow a discharge from *a mine* into the waters of the Commonwealth unless such operation or discharge is authorized by the rules and regulations of the department or such person or municipality has first obtained a permit from the department." (emphasis added). The clear language of subsection 315(a) places no qualifiers on the type of mining operation to be regulated. It simply states that any person operating *a mine* will be subject to the rules and regulations of the DER.

Although subsection 315(h) appears to limit its application to surface coal mining exclusively, subsection 315(i) has no such limitation.[8]

We have held that where the legislature includes certain language in one section, but excludes it from another, such language should not be read by implication in the section in which it has been specifically excluded. *Appeal of McNelly*, 122 Pa.Commonwealth Ct. 601, 607, 553 A.2d 472, 475 (1989).

---

**8.** Subsection 315(j)(1) of the law provides:
  The department shall forthwith develop a process of meet the requirements of this act. This process shall include:
   (1) review by the department of coal mining lands; ...
  Although not raised by the parties, we interpret subsection 315(j)(1) as requiring review of coal lands before designating noncoal lands unsuitable for mining.

When the DER makes a determination regarding the unsuitability of land for mining, subsection 315(k) of the Clean Streams Law requires that the determination be consistent with the present and future regulations at the federal, state and local levels. Section 1 of the Clean Streams Law states that the purpose is:

> *[T]o preserve and improve the purity of the waters of the Commonwealth* for the protection of public health, animal and aquatic life, and for industrial consumption, and recreation; ... providing protection of water supply and water quality; providing for the jurisdiction of courts in the enforcement thereof; ... providing additional remedies for abating pollution of waters; ... *regulating the operation of mines and regulating the impact of mining upon water quality, supply and quantity....*

35 P.S. § 691.1 note.

Therefore, in interpreting subsection 315(i), we must consider the public interest in preserving and improving the waters of the Commonwealth.

The Clean Streams Law concerns mining operations generally and authorizes regulation of *any* type of mining that has a detrimental affect upon the waters of the Commonwealth. It would be unreasonable to regulate only coal mining operations when other mining operations also may adversely affect the waters of the Commonwealth.

Article 1, section 27, of the Pennsylvania Constitution designates the Commonwealth as trustee of its natural resources. The DER is authorized to preserve and maintain its waters. The DER, therefore, has a duty to regulate all types of mining operations in order to preserve and maintain the quality of our waters. In this case, we must construe the language of the statute to be consistent with that of the constitution, which includes regulatory power over all forms of mining operations. 1 Pa.C.S. § 1922(3).

The EHB cites another principle of statutory construction to support its interpretation. Under subsection 315(n), before the DER can designate any area as unsuitable for

mining operations it must prepare a detailed statement on: "(1) the potential coal resources in the area, (2) the demand for coal resources, and (3) the impact of such designation on the environment, the economy, and the supply of coal." The EHB reasoned that if subsection 315(i) were to apply to designation of areas without coal resources as unsuitable for mining, the requirements of subsection 315(n) would be mere surplusage, which is contrary to the tenet that the General Assembly intends an entire statute "to be effective and certain." 1 Pa.C.S. § 1922(2); *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977). We do not agree.

Subsection 315(n) is not necessarily surplusage if subsection 315(i) applies to both coal and noncoal. Subsection 315(n) merely require the DER to assess the potential and demand for coal resources before designating an area unsuitable for mining.

The public is interested in preserving its natural resources. It would be contrary to that interest to designate only coal mining lands but not noncoal mining lands as unsuitable for mining, if mining would have harmful consequences. Furthermore, subsection 315(i) cannot be read to favor noncoal mining operators over coal mining operators or the public.[9] The Clean Streams Law authorizes the DER to regulate all types of mining operations which are harmful to the waters of the Commonwealth.

Therefore, consistent with the express language of the statute, we hold that subsection 315(i) applies to both coal and noncoal mining operations. We reverse the order of the Environmental Hearing Board and remand for further hearings.

## ORDER

We reverse the order of the Environmental Hearing Board and remand for further hearings. We relinquish jurisdiction.

---

**9.** When faced with a balancing of interests, we must favor that of the public over that of an private institution. 1 Pa.C.S. § 1922(5).