629 A.2d 295

**Jose Alberto MENOYO, M.D.; Rafael Papaleo Acevedo, M.D.; and Hector Stella–Estevez, M.D., Petitioners,**

**v.**

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF MEDICINE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 13, 1993.

Decided July 23, 1993.

Theodore O. Rogers and John W. Wellman, for petitioners.

April L. McClaine, for respondent.

Before CRAIG, President Judge, SMITH, J. (P.), and KELTON, Senior Judge.

KELTON, Senior Judge.

Jose Alberto Menoyo, Rafael Papaleo Acevedo and Hector Stella Estevez (collectively, Doctors) appeal from an order of the State Board of Medicine (Board) which ordered that the graduate medical training licenses issued to the Doctors not be extended or renewed.

Because the Doctors relied to their detriment upon the Board's original misinterpretation of its own regulations, we reverse and order license renewals.

The Doctors are graduates of San Juan Bautista School of Medicine (San Juan Bautista) located in Caguas, Puerto Rico. They were issued graduate licenses to train at Crozer–Chester Medical Center (Crozer–Chester) from June 21, 1991 through June 20, 1992. These licenses were extended from June 21, 1992 through August 15, 1992, at which time they expired.

By letter dated June 2, 1992, the Chairman of the Board notified the Doctors that the graduate licenses were issued and renewed in error. The letter further stated that because San Juan Bautista is not accredited, the Doctors' medical school education does not qualify them to train in Pennsylvania. The Doctors were also informed that their graduate licenses would not be renewed in August, 1992.

By letter dated June 22, 1992, Crozer–Chester requested that the Board waive any qualifications that the Doctors may not have met. By order dated July 28, 1992, the Board deemed the letter from Crozer–Chester to be a petition for a hearing filed by the Doctors. The Board then granted the petition and limited the evidence to be adduced to the issue of whether the Board may grant a waiver of unmet medical training qualifications.

On August 11, 1992, a hearing was held before a hearing examiner who certified the record to the Board for review prior to its August 25, 1992 meeting. The Board voted at this meeting to deny any further extensions of graduate licenses. By adjudication and order dated October 27, 1992, the Board found that the Doctors are not entitled to a waiver because "they have not established that they possess the technical skills and educational background to participate in advanced medical training." (Adjudication and Order of the Board at 14). The Board further found that the issuance of graduate licenses to the Doctors would not be beneficial to the health, safety and welfare of the citizens of the Common-

wealth. The Doctors now appeal the Board's order to this Court.[1]

On appeal, the Doctors argue (1) the Board erred in determining that they are ineligible for graduate licenses; (2) the Board erred in finding that the Doctors failed to demonstrate that they are entitled to a waiver of any unmet medical training qualifications; (3) the Board improperly commingled its prosecutorial and adjudicative functions; and (4) the Doctors are entitled by vested right to an extension and renewal of their graduate licenses.

The standards which govern the issuance of graduate licenses are found in the Medical Practices Act of 1985 (Act), Act of December 20, 1985, P.L. 457, 63 P.S. §§ 422.1–422.44. A graduate license empowers the licensee to participate for a period of up to 12 consecutive months in graduate medical training within the complex of the hospital to which he or she is assigned and any satellite facility or other training location utilized in the graduate training program. Section 31(a) of the Act, 63 P.S. § 422.31(a). Section 31(b) of the Act, 63 P.S. § 422.31(b), sets forth the requirements for the issuance of a graduate license:

> No graduate license may be issued unless the applicant is a graduate of an accredited medical college or an unaccredited medical college and has received a medical degree. A graduate license may be issued to an applicant who holds the equivalent of a license without restriction granted by another state, territory or possession of the United States or the Dominion of Canada.

Pursuant to authority granted to it under Section 8 of the Act, 63 P.S. 422.8,[2] the Board has adopted regulations which

---

**1.** Pursuant to Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, our scope of review is limited to a determination of whether constitutional rights were violated, and whether the decision is in accordance with law and supported by substantial evidence. *Cassella v. State Board of Medicine, Bureau of Professional and Occupational Affairs*, 119 Pa.Commonwealth Ct. 394, 547 A.2d 506 (1988).

**2.** Section 8 provides, in pertinent part: "The Board, in the exercise of its duties under this act, shall have the power to adopt such regulations as are reasonably necessary to carry out the purposes of this act...."

further set forth the requirements for the issuance of a graduate license. 49 Pa.Code § 17.5(b) establishes three criteria for the issuance of a graduate license:

(b) To secure a graduate license, an applicant shall satisfy one of the following:

(1) Have graduated from an accredited medical college or an unaccredited medical college and received a medical degree.

(2) Have completed the formal requirements for graduation from an unaccredited medical college, except an internship or social service requirement, and have successfully completed a fifth pathway program and an ECFMG certification examination.

(3) Hold a license to practice medicine without restriction in this Commonwealth or an equivalent license granted by another state, territory or possession of the United States, or the Dominion of Canada.

It is against this statutory framework that we consider the issues raised by the Doctors. They first argue that they meet the requirements for the issuance of a graduate license as set forth in 49 Pa.Code § 17.5(b). The Doctors contend that they have met the first of these criteria in that they are graduates of an unaccredited medical college and have received a medical degree. The Board, however, found that San Juan Bautista is not an "unaccredited medical college" as defined in Section 2 of the Act, 63 P.S. § 422.2. That Section defines "unaccredited medical college" as follows:

An institution of higher learning which provides courses in the art and science of medicine and surgery and related subjects, is empowered to grant professional degrees in medicine, is not accredited by any accrediting body recognized by the board *and is listed by the World Health Organization, its successors or assigns, or is otherwise recognized as a medical college by the country in which it is situated.* Any accrediting bodies recognized by the board on the effective date of this act shall continue to serve in

that capacity unless and until the board recognized a successor.

Section 2 of the Act, 63 P.S. § 422.2 (Emphasis added).

■ In its adjudication and order, the Board found that San Juan Bautista is not accredited by the Liaison Committee on Medical Education, the only accrediting body recognized by the Board for the purpose of accrediting medical colleges. Finding of Fact No. 6. San Juan Bautista is not listed by the World Health Organization nor is it recognized as a medical college by the United States of America. Finding of Fact No. 7. Based on these findings, the Board concluded that San Juan Bautista is not an "unaccredited medical college" *as defined in the Act* and the Doctors are therefore ineligible for graduate medical training licensure.[3]

The Doctors urge us to read the word "country," as used in the definition of "unaccredited medical college," to include Puerto Rico. We decline to give such a broad interpretation to that term. To classify as a "country" a political entity which both parties admit is a territory of the United States would be to contravene Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903, which requires us to construe the words of a statute according to their common and approved usage.

The Doctors also contend that they have met the third criteria of 49 Pa.Code § 17.5(b) in that they hold unrestricted licenses to practice medicine in Puerto Rico.[4] The Board contends that an unrestricted license to practice medicine in Puerto Rico is not the *equivalent* of a license to practice

---

**3.** We reject the Doctors' argument that, because San Juan Bautista is not an "accredited medical college," it is therefore an "unaccredited medical college." If a medical school is considered "unaccredited" merely because it is not "accredited," there would be no need to include within the Act a definition of "unaccredited medical college." The Legislature is not presumed to have intended the provisions of its enactments as mere surplusage. *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977).

**4.** The Commonwealth of Puerto Rico issued to the Doctors unrestricted licenses to practice medicine in Puerto Rico in late June and July of 1992.

medicine without restriction in Pennsylvania. In order to secure such a license in Pennsylvania, an applicant must, *inter alia,* have graduated from an accredited medical college or from an unaccredited medical college. 17 Pa.Code § 17.- 1(a)(2). The Doctors are not graduates of an accredited or an unaccredited medical college, therefore, the Board argues, their licenses are not equivalent to a license without restriction granted in Pennsylvania.

The Doctors contend that 17 Pa.Code § 17.1(a)(2) does not require that a license without restriction issued by another state, territory or possession be the equivalent of a Pennsylvania license and the Board erred in so requiring. The Doctors argue that the regulation merely requires that an applicant hold a license without restriction or its equivalent.

■■■ The interpretation of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it is clear that such interpretation is erroneous. *Gardner v. Department of Environmental Resources,* 145 Pa.Commonwealth Ct. 345, 353, 603 A.2d 279, 283 (1992). Similarly, an agency's interpretation of its own regulations must be accorded controlling weight unless erroneous, inconsistent with other regulations, or inconsistent with the underlying legislative scheme. *Covenco, Inc. v. Commonwealth,* 134 Pa.Commonwealth Ct. 314, 579 A.2d 434 (1990), *aff'd,* 530 Pa. 206, 607 A.2d 1077 (1990). Applying these standards to the case before us, we cannot say that the Board's interpretation of 49 Pa.Code § 17.5(b)(3), requiring a license to practice medicine without restriction issued by another state, territory or possession of the United States be the equivalent of a license to practice medicine without restriction issued by the Commonwealth, is clearly erroneous.

■■ The Doctors next argue that they are entitled to a waiver of any unmet qualifications. Section 31(c) of the Act,

63 P.S. § 422.31(c),[5] which provides for extensions and waivers of graduates licenses, reads as follows:

> The board may extend the validity of a graduate license upon application when such action is warranted. In the event a graduate license holder is issued a license without restriction and wishes to continue graduate medical training, the graduate license holder shall complete and keep current a form satisfactory to the board containing information desired by the board about said graduate medical training program. A graduate of an unaccredited medical college who does not possess all of the qualifications for the issuance of a graduate license but desires to train in a hospital within this Commonwealth in an area of advanced medical training may have the unmet qualifications waived by the board *if the board determines that the applicant possesses the technical skills and educational background to participate in such training and that its issuance is beneficial to the health, safety and welfare of the general public of this Commonwealth.* (Emphasis added).

The Board, in the exercise of its discretion, found that the Doctors "do not possess the technical skills and educational background to participate in advanced medical training in Pennsylvania."

In *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 573, 109 A.2d 331, 335 (1954), our Supreme Court summarized the scope of judicial review over determinations made by administrative agencies as follows:

> [C]ourts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that

5. Section 31(c) as reported in Purdon's, contains significant omissions. The text of Section 31(c) as reproduced in this opinion is from the Act of December 20, 1985, P.L. 457.

review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion. . . . (Emphasis in original).

Based on the standards articulated in *Blumenschein,* we can find no basis to reverse the Board's determination based on the theory of abuse of discretion.

■ The Doctors also argue that they are entitled by vested right to an extension and renewal of their graduate licenses. The Doctors cite *Department of Environmental Resources v. Flynn,* 21 Pa.Commonwealth Ct. 264, 344 A.2d 720 (1975), for the factors to be considered in establishing a vested right. These factors are:

1. the applicant's own due diligence in attempting to comply with the law;

2. the applicant's own good faith throughout the proceedings;

3. the expenditure of substantial unrecoverable sums;

4. the expiration of the applicable appeal period; and

5. the insufficiency of the evidence to prove that the individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

21 Pa.Commonwealth Ct. at 272, 344 A.2d at 725. The Doctors allege that they have satisfied these requirements in that they were issued a training license pursuant to an accurate application, and, in reliance on this license, they moved to Pennsylvania from Puerto Rico. The Doctors further allege that by pursuing graduate medical training in Pennsylvania, they gave up their right to practice general medicine in Puerto Rico for that time period. Additionally, the Doctors have completed their first year of training at a level of performance acceptable to Crozer–Chester. R.R. 51a, 58–59a.

The standards for the renewal of a graduate license are found in 49 Pa.Code §§ 17.6(g) and (h). These Sections provide as follows:

(g) A graduate license is only valid for a maximum of 12 consecutive months, but may be renewed by the Board to permit additional training.

(h) For a graduate license to be renewed, the Board has to receive prior to the expiration of the previously issued license, the required renewal fee—see § 16.13 (relating to licensure, certification, examination and registration fees)—and a completed renewal form. Renewal forms are provided to hospitals in this Commonwealth that offer graduate medical training programs.

These Sections specify no requirements for renewal of a graduate license other than the completion of a form and the payment of the renewal fee. Thus, an applicant who has been issued a graduate license would have a reasonable expectation that such license would be renewed upon completion of those above mentioned requirements.

The Doctors appear to have acted in complete good faith throughout. They relied upon the Board's original favorable interpretation of its own complex and confusing regulations, incurred the expense of moving themselves and their families to this area, gave up other opportunities to practice in Puerto Rico and each successfully completed their first year of graduate training. R.R. 90–91a, 95a. We hold that under the facts of this case, because there is no evidence to indicate that the public health, safety, or welfare would be adversely affected, the Doctors should be permitted to complete the graduate program initially approved by the Board.

Because of our ruling on the foregoing issue, we do not decide whether the Board improperly commingled its prosecutorial and adjudicative functions as in *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992).

Accordingly, we reverse the order of the Board and remand the case to the Board with directions that the graduate licenses issued to the Doctors be renewed.

## ORDER

**AND NOW,** this 23rd day of July, 1993, the order of the State Board of Medicine dated October 27, 1992 is hereby reversed and this matter is remanded to the State Board of Medicine directing that the graduate licenses issued to the Doctors be renewed.

Jurisdiction relinquished.