**[J-14A-2024, J-14B-2024 and J-14C-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| JAMES AND KAREN PEARLSTEIN, | : | No. 21 MAP 2023 |
| | : | |
| Appellants | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 741 FR |
| | : | 2017 dated February 10, 2023 |
| v. | : | overruling the exceptions and |
| | : | Affirming the August 23, 2017 Order |
| | : | of the Board of Finance of Revenue |
| COMMONWEALTH OF PENNSYLVANIA, | : | at Nos. 1624357, 1624358 |
| | : | |
| Appellee | : | ARGUED:  March 6, 2024 |
| | | |
| REED AND GAIL SLOGOFF, | : | No. 22 MAP 2023 |
| | : | |
| Appellants | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 742 FR |
| | : | 2017 dated February 10, 2023 |
| v. | : | overruling the exceptions and |
| | : | Affirming the August 23, 2017 Order |
| | : | of the Board of Finance of Revenue |
| COMMONWEALTH OF PENNSYLVANIA, | : | at Nos. 1624354, 1624355 |
| | : | |
| Appellee | : | ARGUED:  March 6, 2024 |
| | | |
| ROBERT PEARLSTEIN AND CYNTHIA PEARLSTEIN, | : | No. 23 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 743 FR |
| | : | 2017 dated February 10, 2023 |
| | : | overruling the exceptions and |
| v. | : | Affirming the August 23, 2017 Order |
| | : | of the Board of Finance of Revenue |
| | : | at Nos. 1624359, 1624360 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| | : | ARGUED:  March 6, 2024 |
| Appellee | : | |

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**JUSTICE DONOHUE**                                    **DECIDED:  September 26, 2024**

This personal income tax case requires the Court to address the timing of the reporting of net gains or income from like-kind exchanges of real property.  The case arises out of consolidated appeals from decisions of the Board of Finance and Review ("Board") sustaining the Department of Revenue's ("Department") personal income tax reassessments against taxpayers for the years 2013 and 2014.  The Department reassessed the taxes at issue based on its determination that net gains from the exchange of real property are taxable at the time of the exchange.  Reed Slogoff, Gail Slogoff, Karen Pearlstein, James Pearlstein, Robert Pearlstein and Cynthia Pearlstein (collectively "Taxpayers"),[1] partners in real estate purchasing and development partnerships appealed.  Based on our careful review of the relevant statutory and regulatory scheme, we conclude that net gains on like-kind exchanges are taxable at the time of the exchange.  We therefore affirm the order of the Commonwealth Court.

At all times relevant to the present dispute, the Pennsylvania Tax Reform Code of 1971 ("TRC")[2] taxed net gains or income from the sale, exchange or other disposition of property as income.  72 P.S. § 7303(a)(3) ("Section 303").[3]  The gain is recognized in the

---

[1]  James and Karen Pearlstein, Reed and Gail Slogoff, and Robert and Cynthia Pearlstein filed personal income taxes which did not account for net gains on like-kind exchanges at the time the exchanges occurred.  Their appeals have been consolidated. Commonwealth Court Order, 9/4/2018, at 1 (consolidating appeals for purposes of filing status reports and scheduling status/settlement conferences).  For most of the preceding litigation, three identical decisions were issued on three separate dockets.  For ease of discussion, we refer to the appeals generally using the broader term of "Taxpayers" given that the same reasoning ultimately applies to the now consolidated appeals.

[2]  Act of March 4, 1971, P.L. 6, as amended 72 P.S. §§ 7101-10004.

[3]  Notably, in 2022, the General Assembly amended the TRC to recognize the federal income tax deferral rule in 26 U.S.C. § 1031(a)(1) as applicable for Pennsylvania personal income tax purposes.  Act of July 8, 2022, P.L. 513, as amended 72 P.S. § 7303(a.5). The General Assembly provided that the amendment "shall apply to transactions occurring in tax years beginning after December 31, 2022."  *Id*.  Given the temporal limitation and the presumption against retroactive effect, 1 Pa.C.S. § 1926 ("No statute (continued…)

tax year in which "the amount realized from the conversion of the property into cash or other property exceeds the adjusted basis of the property."  61 Pa. Code § 103.13(a).

As under the TRC, the federal Internal Revenue Code ("IRC") also provides that the gain or loss from a sale of property must be recognized upon the sale or exchange of the property.  26 U.S.C. § 1001(c) (stating that, except as otherwise provided, "the entire amount of the gain or loss, determined under this section, on the sale or exchange of property shall be recognized[]").  However, the IRC provides an exception to this general rule:  a taxpayer does not have to report the gain or loss on the exchange of real property where a "like-kind exchange" occurs pursuant to 26 U.S.C. § 1031(a)(1) ("Section 1031(a)").  According to the IRS, a like-kind exchange is "when you exchange real property used for business or held as an investment solely for other business or investment property that is the same type or 'like-kind[.]'"[4]  First promulgated in 1921 as Section 202(c), the exception has long allowed nonrecognition treatment for exchanges of certain properties.  The Revenue Act of 1921, Pub L. No. 67-98, § 202(c), 42 Stat. 227, 230.  Now enshrined in Section 1031(a), the exception provides that a gain or loss from the exchange of real property is not treated as a realized gain or loss so long as the real property was "held for productive use in a trade or business or for investment" and "is exchanged solely for real property of like kind which is to be held either for productive use in a trade or business or for investment."  26 U.S.C. § 1031(a)(1).[5]  That is, a taxpayer

shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."), the amendment does not apply to this dispute.  Unless otherwise noted, the language of the TRC provisions cited throughout remain unchanged by the 2022 amendments.

[4]    IRS, *Like-Kind Exchanges – Real Estate Tax Tips*, https://www.irs.gov/businesses/small-businesses-self-employed/like-kind-exchanges-real-estate-tax-tips, (last visited September 12, 2023).

[5]  The exception reads as follows:

(continued…)

defers realization of the gains or losses for federal tax purposes by exchanging property rather than "liquidat[ing] or 'cash[ing] in' on his or her original investment." *N. Cent. Rental & Leasing, LLC v. United States*, 779 F.3d 738, 741 (8th Cir. 2015). "With a [like-kind exchange,] the taxpayer essentially continues his or her original investment via the like-kind property." *Id.* (internal citations omitted). Relevantly, the TRC does not explicitly address like-kind exchanges, nor does it reference Section 1031 or the federal income tax deferral rule.

In this case, Taxpayers completed like-kind exchanges of real property in 2007 and 2008 and deferred the gains realized on the exchanges on both their Pennsylvania and federal income tax filings. They timely filed 2013 and 2014 Forms PA-40 for their personal income taxes, which deferred realization and recognition of the gain. After reviewing the tax returns, the Department determined that passthrough entities, in which Taxpayers held an interest, sold property and deferred the net gains from the sale of property as a like-kind exchange. However, the Department interpreted the TRC as treating net gains from the sale, exchange, or other disposition of property as income, and it found no exception allowing deferral for gains on like-kind exchanges. Viewing deferral of the gains as inconsistent with the TRC, the Department issued notices of assessment to Taxpayers, increasing their 2013 and 2014 net gains and assessing penalties and interest.

---

(a) Nonrecognition of gain or loss from exchanges solely in kind. –

**(1) In general**. -- No gain or loss shall be recognized on the exchange of real property held for productive use in a trade or business or for investment if such real property is exchanged solely for real property of like kind which is to be held either for productive use in a trade or business or for investment.

26 U.S.C. § 1031(a)(1).

Taxpayers protested the assessment notices at the Board of Appeals claiming that deferring reporting of gains on the like-kind exchange was permissible under the personal income tax Bulletin 2006-07 (October 20, 2006) (hereinafter "Bulletin 2006-07").[6]  In addressing "Pennsylvania tax treatment of [Section] 1031 like-kind exchanges[,]" Bulletin 2006-07 recognizes that Pennsylvania's personal income tax does not contain an analogous provision to IRC Section 1031 and indicates that "exchanges of property that result in gain or income are generally subject to tax."  Bulletin 2006-07, at 3.  Bulletin 2006-07 then provides the following:

> However, the Department has determined that gain or loss on like-kind exchanges does not have to be recognized at the time of the exchange if a taxpayer's method of accounting permits the deferral of gain from a like-kind exchange.  For example, APB Opinion 29 provides for non-recognition of gain or loss on certain like-kind exchanges for taxpayers who consistently use GAAP[7] principles of accounting.  A taxpayer must use the method of accounting on a **consistent** basis and the method of accounting must clearly reflect his income.  A taxpayer may not change his method of accounting just to obtain a tax benefit for a particular transaction.  Nevertheless, the deferral of gain or income associated with like-kind exchanges is the exception.

Id.  Taxpayers challenged the assessment notices and requested penalty abatement relying on Bulletin 2006-07.  The Board of Appeals denied their claims.

---

[6]  According to 61 Pa. Code § 3.4, tax bulletins are considered "revenue information material," which the Department issues "for informational purposes only and should not be relied upon or used in tax appeals."  See also 61 Pa. Code § 3.5 (providing that, where there is a conflict between documents within the Revenue Information System, regulations, statements of policy and letter rulings take precedence over revenue information).

[7]  Generally Accepted Accounting Principles ("GAAP") is a "set of standards promulgated by the Financial Accounting Standards Board, to 'clearly reflect income' under Section 101.2" of the [personal income tax] regulations, 61 Pa. Code § 101.2.  Joint Stipulation of Facts, 7/6/2020, ¶ 22.  The Department "does not … take the position that all of the GAAP principles clearly reflect income."  Id.

Taxpayers appealed to the Board. Taxpayers challenged the Department's calculation of their taxes, arguing that their taxable income is "computed using the method of accounting regularly used in keeping the taxpayers' books." Pearlsteins' Board Decision, 8/29/2017, at 2 (citing 72 P.S. § 7303(a.1)) and 61 Pa. Code § 101.2). Their view was that the determination of net gains from disposition of property in a like-kind exchange is a function of the taxpayers' method of accounting. They insisted that Bulletin 2006-07 and PA Schedule C both affirm that theirs is an acceptable accounting method. *Id*. The Department responded that the Federal Income Tax ("FIT") method of accounting is not an acceptable accounting method for Pennsylvania personal income tax purposes. The Department asserted that any contrary reading of Bulletin 2006-07 notwithstanding, the TRC prohibits deferral. *Id*. at 3.

The Board reversed the assessment of penalties but otherwise agreed with the Department. Pearlsteins' Board Decision, 8/29/2017, at 4. It observed that the Commonwealth imposes a personal income tax on eight classes of income, one of which is net gains or income from disposition of property. *Id*. at 3 (citing 72 P.S. §§ 7302(a), 7303(a)(3)). Further, it acknowledged that the TRC identifies acceptable methods of calculation in Section 303 and in personal income tax regulations. 72 P.S. § 7303 (a.1) (providing that income shall be computed under the taxpayers' regularly used method if it clearly reflects income or under a method which "clearly reflects income"); 61 Pa. Code § 101.2 (providing, inter alia, that no method of accounting is prescribed but that the method must "clearly reflect income"). Finally, the Board recognized that, contrary to its current position, the Department published guidance on like-kind exchanges in Bulletin 2006-07 that "it will not require a taxpayer to realize gain on an exchange 'if a taxpayer's method of accounting permits the deferral of gain from a like-kind exchange.'" Pearlsteins' Board Decision, 8/29/2017, at 3 (citing Bulletin 2006-07, at 3).

Setting aside the language of Bulletin 2006-07, the Board found that "[t]here is no statutory or regulatory authority permitting like-kind exchanges in Pennsylvania, and [Bulletin 2006-07] does not permit the use of federal income tax accounting to defer gain on like-kind exchanges." *Id*. at 3. The Board stated that Taxpayers could not use the FIT method of accounting "to incorporate wholesale federal tax principles" into the Pennsylvania personal income tax calculations, given that the federal tax principles are not incorporated into the TRC. *Id*. at 4. It stated that incorporating these principles into the personal income tax calculation must be done through legislative action. *Id*. The Board also drew attention to the instructions for PA Schedule C which it viewed as consistent with its reading of the TRC. *Id*.[8] The Board concluded that Taxpayers could not defer gain on a like-kind exchange even if they used the FIT method of accounting. *Id*. Thus, it issued an order in each appeal providing for the reassessment of Taxpayers' 2013 and 2014 tax plus interest. Order, 8/23/2017, at 1.

In December 2017, after the Board decisions issued, the Department posted a revised bulletin on like-kind exchanges. Revised Bulletin 2006-07 (Oct. 20, 2006) ("Revised Bulletin"). The Revised Bulletin eliminated reference to the Department's determination "that gain or loss on like-kind exchanges does not have to be recognized

---

[8] The relevant section on the PA Schedule C states:

> Do not report a like-kind exchange on PA Schedule C, unless it is a normal and recognized transaction in your business or profession in accordance with APB 29. PA law does not have like-kind exchange provisions. You must include the gain or loss from a sale, exchange or disposition of a business asset on Line 4 of PA Schedule C if the transaction was a normal business transaction. You must report any gain or loss from the sale of a nonbusiness asset or property or the sale of a business or segment thereof on PA Schedule D if the property sold was not replaced.

Joint Stipulation of Facts, 7/6/2020, Exhibit F (PA Schedule C Instructions), at 1.

at the time of the exchange if a taxpayer's method of accounting permits the deferral of gain from a like-kind exchange." Bulletin 2006-07. Instead, according to the Revised Bulletin, "Pennsylvania personal income tax law does not contain a provision analogous to Section 1031(a). Therefore, Section 1031(a) cannot be used as a basis to defer gain from the exchange of properties for Pennsylvania [personal income tax] purposes." Revised Bulletin, at unnumbered 3.

Taxpayers petitioned for review with the Commonwealth Court. Petition for Review, 9/13/2017. Because settlement discussions, though extensive, were not fruitful, the court directed the parties to complete discovery and file stipulations of fact. Single Judge Order (Judge Leadbetter), 10/29/2019, at 2. On July 6, 2020, the parties entered a joint stipulation of facts.[9]

The parties stipulated that Taxpayers hold equal shares in five limited partnerships organized under Pennsylvania law for the purpose of buying, selling, developing, and managing commercial and residential real estate. Joint Stipulation of Facts, 7/6/2020, ¶¶ 5-7. Each limited partnership reported its respective property disposition on its timely filed 2013 and 2014 federal income tax returns as the first transaction in a like-kind exchange, and they reported no gain or loss on the transaction. *Id*. ¶¶ 9-10 (citing Exhibit A (detailing the like-kind exchanges)). Addressing some of the specifics of the accounting of the relevant like-kind exchanges, the parties stipulated that the Department issued notices of assessment in August 2016, which it calculated based upon information the limited partnerships reported to the Internal Revenue Service. *Id.* ¶¶ 12-13 (citing Exhibits B-1, B-2, B-3, C-1, C-2, C-3, D) (explaining that the Department relied on the limited

_____

[9] The stipulation indicated that the facts listed "may be accepted as true and correct" and are a part of the record. The parties agreed to the authenticity and admissibility of all exhibits, and they reserved the right to introduce additional evidence until the time that briefing is closed, or to object to the relevance or materiality of evidence introduced. Joint Stipulation of Facts, 7/6/2020, at 1.

partnerships' reported carryover basis in the property relinquished in the exchange), ¶ 41 (Exhibit N (IRS Form 8824)[10]). They stipulated that the limited partnerships utilized a comprehensive property management software to maintain a single set of books for the businesses. The stipulations described how the software assists Taxpayers in preparing their income tax returns. Notably, the software generates a report which is reviewed by Certified Public Accountants ("CPAs"), who reclassify and adjust as necessary. The adjusted report is used to generate the limited partnerships' income tax returns. Then the entries in the software are adjusted so that the internal book entries reflect federal income tax accounting rules. *Id*. ¶ 19.

The parties stipulated that FIT is an "Other Comprehensive Basis of Accounting" (an "OCBOA") as set forth in the auditing standards promulgated by the Auditing Standards Board of the American Institute of CPAs, and that it is a method of accounting used in real estate businesses.[11] *Id*. ¶¶ 20-21. As to the Department's view, the stipulations indicate that the Department considers certain rules and principles under GAAP to "clearly reflect income" under Section 101.2 of the personal income tax regulations, 61 Pa. Code § 101.2. *Id*. ¶ 22. The Department "does not … take the position that all of the GAAP principles clearly reflect income." *Id*. Further,

> The Department considers any accounting rule or practice
> that incorporates federal tax gain deferral principles to be
> contrary to "accepted accounting principles and practices"

---

[10]  The parties submitted true and correct copies of the IRS Forms 8824, which served as the bases for the Department's tax assessments. Joint Stipulation of Facts, 7/6/2020, ¶ 41 (citing Exhibit N).

[11]  The parties submitted Statement No. 62 of the Statements on Auditing Standards promulgated by the Auditing Standards Board of the American Institute of Certified Public Accountants, which recognizes an OCBOA where the "reporting entity keeps its books and records using the rules set forth in the IRC and regulations promulgated thereunder to determine its income, loss, gain, and deductions for tax reporting purposes." Joint Stipulation of Facts, 7/6/2020, ¶ 20 (citing Exhibit E, § 623.04).

and not "clearly reflect income" within the meaning of 61 [Pa.] Code § 101.2 unless such deferral rule or practice is specifically incorporated into Article III of the Tax Reform Code of 1971.

*Id.* ¶ 23.

The parties stipulated to the content of Bulletin 2006-07 and the subsequent Revised Bulletin, and they agreed that there was no change in the TRC or in the auditing standards from the Auditing Standards Board of the American Institute of CPAs that prompted the revision. *Id.* ¶¶ 32-33. The Department uncovered only one private letter ruling regarding like-kind exchanges for personal income tax purposes, dated June 13, 2005. *Id.* ¶ 31 (Exhibit J). "The Department [did] not promulgate[] any regulations regarding limitations on the use of FIT for purposes of determining [personal income tax]." *Id.* ¶ 34. The parties stipulated that the limited partnerships relied on the interpretation of Section 1031(a), 72 P.S. § 7303(a)(3), the relevant regulations, and Bulletin 2006-07. *Id.* ¶ 35. They stipulated that three of the limited partnerships completed like-kind exchanges of real property in prior years and deferred gains realized in those prior exchanges but were not given notice of review of these prior exchanges. *Id.* ¶ 36. They attached to the stipulations true and correct copies of the Board decisions, *id.* ¶ 37, the letter submitted by Department counsel to the Board dated June 21, 2017, *id.* ¶ 38 (Exhibit L); the current chapter on "Pass Through Entities" from the Pennsylvania personal income tax Guide, *id.* ¶ 42, and the expert report of Brian Duffy, CPA, CFF, dated June 29, 2020, *id.* ¶ 39 (Exhibit M, hereinafter "Duffy Report"). As to Mr. Duffy's report, the Department did not stipulate to any conclusions of law contained therein. *Id.* ¶ 39. Mr. Duffy is an expert qualified to testify to matters of accounting. *Id.* ¶ 40. Pursuant to the stipulations, the scope of his report is limited to providing the court with opinions in his area of expertise, not legal opinions. *Id.*

By permission, the parties submitted additional joint stipulations regarding the expert report of Lisa A. Meyers, CPA, CFE, MAFF, CGMA, dated October 19, 2020. Additional Joint Stipulation of Facts, 11/18/2020, ¶¶ 43-44 (Exhibit P, hereinafter "Meyers Report"). The report was attached as an exhibit to the additional joint stipulations, and, as with the other expert, the scope of the report was limited to providing opinions in her area of expertise, not legal opinions. *Id*. ¶ 44. Finally, a ten-page specimen Exchange Agreement was provided to illustrate a like-kind exchange. *Id*. ¶ 45 (citing Exhibit Q, hereinafter "Specimen Exchange Agreement").

Oral argument was heard by the Commonwealth Court en banc. The Commonwealth Court, reviewing the matter de novo,[12] affirmed the Board's decisions. *Pearlstein v. Commonwealth*, 267 A.3d 593, 593 (Pa. Commw. 2021) ("*Pearlstein I*").[13] Taxpayers raised two issues: first, whether Section 303(a)(3) of the TRC and Section 101.2 of the Pennsylvania personal income tax regulations authorize the FIT method of accounting and second, "whether the Board erred in assessing [personal income tax] on a like-kind transaction by disregarding its own regulation and prior public guidance." *Id*. at 597.[14]

---

[12] Citing *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Commw. 1997) and Pa.R.A.P. 1571(f), the court recognized that it sits as a trial court reviewing the matter de novo. *Pearlstein I*, 267 A.3d at 597, n.3. The court was bound by the stipulations of fact filed by the parties but could draw its own legal conclusions from those facts. *Id*.

[13] The court addressed James and Karen Pearlstein's appeal in this opinion. The court affirmed the Board's decisions with regard to Reed and Gail Slogoff, and Robert and Cynthia Pearlstein based on the reasoning in the *Pearlstein I*. *See Pearlstein v. Commonwealth*, 2021 WL 5707121, *1 (Pa. Commw. Dec. 2, 2021); *Slogoff v. Commonwealth*, 2021 WL 5707073, *1 (Pa. Commw. Dec. 2, 2021).

[14] Taxpayers did not question the authority of the Department to identify acceptable methods of accounting. They questioned only whether the Department has authority to retroactively prohibit a previously accepted method of accounting.

The Commonwealth Court affirmed the Board's decisions because it found that deferring the reporting of gains from like-kind exchanges violates the TRC's requirement that any accounting method used must "clearly reflect income." 72 Pa.C.S. § 7303(a.1); *see also* 61 Pa. Code § 101.2. The court stated that neither Taxpayers nor the Department disputed that gains from like-kind exchanges are subject to taxation as income under Section 303. The only question is **when** such gains are subject to taxation—when the like-kind exchange occurs or when the exchanged property is sold. *Pearlstein I*, 267 A.3d at 603-04. The court first acknowledged the expert opinions presented. The parties' experts' testimony established "that Taxpayers used the FIT accounting method to prepare and conform their income and expenses to Federal tax rules and regulations, including tax deferral on like-kind exchanges pursuant to IRC § 1031." *Id*. at 605. The court found credible the Department's expert's statement that "Taxpayers' accounting method requires adjustments to 'create state income financial data that is acceptable to the [Department].'" *Id*. It explained that here, Taxpayers must make adjustments to account for gain realized from their like-kind transactions at the time the transactions occurred, so that the gain would be subject to taxation as income under the TRC "which does not permit deferral." *Id*. at 605.

The Commonwealth Court thus initially found that the Pennsylvania personal income tax regulations did not bar the use of the FIT accounting method, "because that method is regularly used in the real estate development business, and Taxpayers have used and continued to use this method of accounting in their business." *Pearlstein I*, 367 A.3d at 605-06.[15] Nonetheless, based on its conclusion that the deferral of gains on like-

---

[15] The court stated that Section 101.2 does not proscribe a particular method of accounting, but merely requires use of a method that "clearly reflects income." *Pearlstein I*, 267 A.3d at 605 (citing 72 P.S. § 7301(a) and 61 Pa.Code § 101.2). Further, it noted that "an accounting method that reflects generally accepted accounting principles in a (continued…)

kind exchanges does not "clearly reflect income," the court determined that the FIT method of accounting cannot be used to defer gains on like-kind exchanges. *Id*. at 606. The court explained that, "as applied to tax deferral on like-kind exchanges, the FIT accounting method does not clearly reflect income, and, therefore, that presumption[,]" that the FIT accounting method is presumed to clearly reflect income because it is used for FIT purposes, "has been rebutted here[.]" *Id*.

The Commonwealth Court cited *AMP Products Corporation*, 593 A.2d 1, 3 (Pa. Commw. 1991), *aff'd*, 608 A.2d 25 (Pa. 1992), for the principles that the power of taxation, "except that part ceded to the United States, is in the state[,]" and that the Commonwealth's power must derive from enactments of the General Assembly.[16] *Id*.

---

trade or business 'shall be presumed to clearly reflect income.'" *Id*. (citing 61 Pa. Code § 101.2). Finally, according to Section 101.1 of the personal income tax regulations, accepted accounting principles are those principles that are acceptable by accounting profession standards which are not inconsistent with Department regulations. *Id*. (citing 61 Pa.Code § 101.1). The court concluded that "[b]ased on the plain language of these [personal income tax] regulations, … Taxpayers are not prohibited from using the FIT method of accounting, because the method is regularly used in the real estate development business, and Taxpayers have used and continue to use this method of accounting in their business." *Id*. at 606.

[16] *AMP* involved a tax appeal in which a corporation (AMP) was "assessed deficiencies" for failure to withhold Pennsylvania personal income tax from 1985 to 1988 for certain contributions made to the employee savings and thrift plan. The plan – an old age or benefit plan – was exempt from FIT and contained a qualified cash or deferred arrangement pursuant to 26 U.S.C. § 401(k). Under the plan's arrangement, an employee who wished to participate entered into a salary reduction agreement with AMP, and they would receive a reduced rate of compensation in the amount equal to their plan contribution. *AMP*, 593 A.2d at 1. AMP insisted that the contributions were not taxable compensation subject to Pennsylvania personal income tax given that they were employer contributions that fit within the TRC's exclusion of "payments made by employers … for … retirement." 72 P.S. § 7301(d)(vi).

The court disagreed and found that the Department correctly assessed AMP's contributions to the plan as taxable compensation subject to withholding tax pursuant to the Tax Reform Code of 1971. It emphasized the state's "sovereign power of taxation" which in Pennsylvania "is statutory and must be derived from enactment of the General (continued…)

The court recited the longstanding principle that "'the Federal scheme is inapplicable to Pennsylvania. As a sovereign, the Commonwealth can impose its own scheme of taxation and has chosen to tax such contributions at the time they are made.'" *Id*. (citing *AMP*, 593 A.2d at 3). It also analogized to this Court's determination that accrued interest on loan principal is includable as taxable gain under the TRC even though it was not converted into cash or other property. *Pearlstein*, 267 A.3d at 605 (citing *Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014)).

Finally, the court addressed Taxpayers' argument "that the Department erred in interpreting Section 101.2 of the Pennsylvania personal income tax regulations and abused its discretion when it attempted to amend or overrule Section 101.2 by issuing the Revised Bulletin and revised tax form instructions in 2017." *Id*. The court found that its interpretation of the TRC as precluding application of the Section 1031 exception was consistent with Bulletin 2006-07 as well as the Revised Bulletin issued in 2017, both of which, according to the court, offered the same guidance that deferral of gains for like-kind exchanges is not permitted under the TRC. *Id*. at 606 (stating that "both [] Bulletin [2006-07] and the Revised Bulletin offer the same guidance, namely that IRC § 1031 tax deferral on gains from like-kind exchanges is not permitted under the TRC[]").

The court acknowledged the parties' stipulation that Taxpayers relied on Bulletin 2006-07 when preparing their Pennsylvania personal income tax returns. Nonetheless it stated that "their reliance on this guidance, even if misleading, cannot prevent the

---

Assembly." *AMP*, 593 A.2d at 3 (internal citations omitted). The court then cited a controlling regulation addressing "Old Age or Retirement Benefit Plans" which indicates that "[c]ontributions to [an old age or retirement benefit] plan made by an employe or other individual directly or indirectly, whether through payroll deduction, a salary reduction agreement or otherwise, are not excludable from his income." 61 Pa. Code § 101.6(c)(8)(ii)(B) (emphasis added). The court contrasted this with a regulation indicating that contributions "made by employers … are excludable[.]" 61 Pa. Code § 101.6(c)(8)(ii)(A).

Department from collecting a tax that is legally due." *Id*. (citing *American Electric Power Service Corp. v. Commonwealth*, 160 A.3d 950, 960 (Pa. Commw. 2017)[17]). Further, the court stated that the regulations themselves point out that bulletins are for "informational purposes only[,]" are not to be relied upon in tax appeals, and carry less weight than regulations. *Pearlstein I*, 267 A.3d at 606 (citing 61 Pa. Code §§ 3.4, 3.5). Therefore, the court affirmed the order of the Board.

Judge Crompton dissented to express his belief that Taxpayers' method of accounting satisfied the statute and regulation and complied with the Department's guidance provided in Bulletin 2006-07, which was in effect in 2013 and 2014. *Pearlstein I*, 267 A.3d at 607 (Crompton, J., dissenting). He emphasized that Bulletin 2006-07 advised the public that the Department had determined that gain on like-kind exchanges "does not have to be recognized at the time of the exchange if the taxpayer's method of accounting permits deferral of gain from a like-kind exchange." *Id*. (citing Bulletin 2006-07, at 3). Thus, Taxpayers "complied with [] Bulletin [2006-07] to the letter." *Id*. He acknowledged that the statute "codifies the Department's judgment as to what method clearly reflects income[.]" *Id*. (citing 72 P.S. § 7303 (a.1)). Therefore, he did not question

---

[17]  In *American Electric*, AEPSC argued that even if it was properly subject to a gross receipts tax, the Commonwealth was precluded from collecting interest and penalties under the doctrine of equitable estoppel because AEPSC specifically contacted the Department for an opinion on the issue and relied on the advice given to its detriment. *AEPSC*, 160 A.3d at 959-60. The court found the issue waived. *Id*. In the alternative, the court explained that equitable estoppel did not apply because AEPSC did not actually rely upon the Department's advice. The advice went to a different tax transaction (receipts from sales to a municipality), not to the one relevant (receipts from sales to an industrial development authority). *Id*. at 960. The court stated that even if the advice could be construed as misleading, "it is 'a fundamental legal principle that a State or other sovereignty cannot be estopped by any acts or conduct of its officers or agents in the performance of a governmental function. No errors or misinformation of officers or agents can estop the government from collecting taxes legally due." *Id*. (quoting *DS Waters of America, Inc. v. Commonwealth*, 150 A.3d 583, 592 (Pa. Commw. 2016) (internal citation omitted)).

the Department's authority to alter its construction of its regulations over time, but merely disagreed that the Department could retroactively apply revised guidelines to Taxpayers. *Id*. at 608-09.

Taxpayers filed timely exceptions to the court's opinion and order, and the court issued an opinion overruling Taxpayers' exceptions and affirming the orders of the Board. Exceptions, 1/3/2022, at 1-20; *Pearlstein v. Commonwealth*, 291 A.3d 923 (Pa. Commw. 2023) ("*Pearlstein II*"). Taxpayers' only novel argument was that the court "erred by failing to strictly construe Section 303(a.1) of the TRC in Taxpayers' favor[.]" *Id*. at 925-26. The court acknowledged that Sections 1928(b)(3) and (5) of the Statutory Construction Act require that statutes imposing taxes and exempting persons or property from taxes should be strictly construed. *Id*. at 926 (citing 1 Pa.C.S. § 1928(b)(3) and (5)). "Provisions imposing taxes must be strictly construed in favor of taxpayers[,]" and those "exempting persons or property from taxation must be strictly construed against taxpayers." *Id*. at 926 (citing *Greenwood Gaming and Entertainment, Inc. v. Department of Revenue*, 90 A.3d 699, 707 (Pa. 2014)). The court found that in either instance, these principles apply only when statutory language is ambiguous, and the court found no ambiguity in Section 303(a.1) of the TRC. *Id*. (citing 72 P.S. § 7303(a.1)). It reiterated its holding from *Pearlstein I* that the plain language of Section 303(a.1) permits the Department to assess personal income tax on net gains from like-kind exchanges at the time the exchanges are made, "because the FIT method of accounting does not clearly reflect income as defined under the TRC." *Id*. (citing *Pearlstein I*, 267 A.3d at 604).

Judge McCullough, who had joined the majority in *Pearlstein I*, issued a dissenting opinion rehashing Judge Crompton's dissent from the prior decision. *Pearlstein II*, 291 A.3d at 926-27 (McCullough, J., dissenting). According to the dissent, Taxpayers were

entitled to the benefit of the Department's opinion expressed in Bulletin 2006-07, and the Revised Bulletin should not have been applied retroactively. *Id*.

Taxpayers filed a Notice of Appeal from the Commonwealth Court's order of February 10, 2023. This Court granted oral argument to address all of the questions raised by Taxpayers:

1. Whether the [FIT] method of accounting is an accepted accounting principle, system, or practice or procedure where it is widely accepted by the accounting profession pursuant to its professional standards.

2. Whether the FIT method of accounting is consistent with Regulation Section 101.2, and therefore presumed to clearly reflect income, because it is widely accepted by and consistently applied by the accounting profession in the real estate business, was used consistently by [T]axpayers in their real estate business, and was used by [T]axpayers consistently for [FIT] purposes.

3. Whether the [Department] expressly acknowledged in its original [Bulletin 2006-07], which was in effect during the 2013 and 2014 tax years, its acceptance of gain deferral on like-kind exchanges for Pennsylvania [personal income tax] when a generally accepted method of accounting is used on a consistent basis from year to year.

4. Whether the [c]ourt erred in failing to hold that the authority in Section 303(a.1) to recompute income is limited by the mandated presumption in Regulation 101.2 that a calculation which meets the criteria of the regulation clearly reflects income.

5. Whether the [c]ourt erred in deferring to the Department's limited discretion to recompute income under Section 303(a.1) without first following Regulation 101.2 and analyzing whether income computed consistently using the FIT method of accounting.

Per Curiam Order, 11/22/2023.

Though framed as five separate issues, the overarching dispute, and resolution of each issue, requires interpreting the statutory and regulatory framework relating to the reporting of income from the disposition of property. In interpreting these provisions, we follow the well-established principles of statutory construction. Our object is to ascertain

and effectuate the intention of the General Assembly, and we aim to give effect to all provisions. 1 Pa.C.S. § 1921(a). We follow the words of the statute so long as they are clear and free from ambiguity. 1 Pa.C.S. § 1921(b).

When the words are not explicit, we look to other matters including legislative and administrative interpretations of the statute. 1 Pa.C.S. § 1921(c)(8); *Franczyk v. Home Depot, Inc.*, 292 A.3d 852, 856 (Pa. 2023) (providing that we only look outside of the statute for evidence of the legislative intentions to resolve an ambiguity). A statute is ambiguous when it is susceptible to at least two reasonable interpretations. *Povacz v. Pa. Pub. Util. Comm'n*, 280 A.3d 975, 991 (Pa. 2022). Provisions imposing taxes are to be strictly construed, as are provisions exempting persons and property from taxation. 1 Pa.C.S. § 1928(3), (5). Statutes relating to the same things are in pari materia and they "shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932(a), (b). When there is ambiguity in a statutory interpretation, "a court may find guidance for its interpretation in certain external factors." *Id.* (citing 1 Pa.C.S. §§ 1501-1991).[18]

---

[18] Those factors include, but are not limited to:

    (1) The occasion and necessity for the statute.

    (2) The circumstances under which it was enacted.

    (3) The mischief to be remedied.

    (4) The object to be attained.

    (5) The former law, if any, including other statutes upon the same or similar subjects.

    (6) The consequences of a particular interpretation.

    (7) The contemporaneous legislative history.

    (8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

The central statutory provisions are Section 303(a)(3) and Section 303(a.1) of the TRC. Section 303(a)(3) identifies net gains or income from disposition of property as a relevant class of income subject to taxation. More specifically, it identifies:

**Section 303. Classes of income**

(a) The classes of income referred to above are as follows:

\* \* \*

(3) Net gains or income from disposition of property. **Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real property**, tangible personal property, intangible personal property or obligations issued on or after the effective date of this amendatory act by the Commonwealth; any public authority, commission, board or other agency created by the Commonwealth; any political subdivision of the Commonwealth or any public authority created by any such political subdivision; or by the Federal Government **as determined in accordance with accepted accounting principles and practices**[.]

72 P.S. § 7303(a)(3) (emphasis added).[19] Thus, net gains or net income, less net losses, derived from sale or exchange of real property is a class of income under Section 303(a)(3).

---

[19] Section 303(a)(3) contains various subsections, none of which impact our resolution of the appeal. Subsection (a)(3)(i) details the calculation of the basis of the property. *See* 72 P.S. § 7303(a)(3)(i) (providing that, for property acquired after June 1, 1971, "the actual date of acquisition shall be used in determination of the basis" of the property). Subsections (a)(3)(iii) through (a)(3)(vii) address those items not encompassed within "sale, exchange or other disposition" and "net gains or net income, less net losses." *Id*. § 7303(a)(3)(iii) & (a)(3)(vii) (establishing that net gains or income, less net losses shall not include gains, income or losses that are statutorily free from taxation or those that derive from disposition of the taxpayer's principal residence); § 7303 (a)(3)(iv), (v), & (vi) (providing that "sale, exchange or other disposition" shall not include exchange of stock or securities in a corporation, transfer of a common trust fund's assets, or transfer of an interest in a partnership, a liquidation made in connection therewith, or a consolidation or division of enterprises unless taxable income is recognized for Federal income tax purposes).

As to the calculation of that income, the same provision gives the following direction:

> (a.1) Income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes income in keeping the taxpayer's books. If the department determines that no method has been regularly used or the method used does not clearly reflect income, the computation of income shall be made under a method which, in the opinion of the department, clearly reflects income.

72 P.S. § 7303 (a.1).

We find some indication of the factors guiding the "opinion of the [D]epartment[,]" *id.*, in the Department's regulation Section 101.2. That section provides this guidance:

> **Section 101.2. Accounting methods.**
>
> No one method of accounting is prescribed for taxpayers. Each taxpayer shall adopt the methods, forms and systems that best suit his needs, so long as they clearly reflect income. A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with prevailing conditions or practices in that trade or business shall be presumed to clearly reflect income, if the method is used for Federal income tax purposes.

61 Pa. Code § 101.2.

There is a clear emphasis on using a method of accounting that clearly reflects income. This emphasis is apparent in the statutory scheme which provides that, "[i]f the department determines that no method has been regularly used **or the method used does not clearly reflect income**, the computation of income shall be made under a method which, in the opinion of the department, **clearly reflects income**." 72 P.S. § 7303(a.1) (emphasis added). The emphasis carries through in the regulations which indicate that taxpayers shall adopt methods, forms and systems suitable to their needs "so long as they clearly reflect income." 61 Pa. Code § 101.2.

As to the method of accounting, the provisions emphasize that the method used follow "accepted accounting principles and practices" and that the Department has the final say as to whether the method clearly reflects income. Section 303(a) specifically indicates that the determination of income must be "in accordance with accepted accounting principles and practices." 72 P.S. § 7303(a)(3). The TRC defines "Accepted accounting principles and practices" as, "unless otherwise explicitly provided for in this article, those accounting principles, systems or practices, including the installment sales method of reporting, which are acceptable by standards of the accounting profession and which are not inconsistent with the regulations of the department setting forth such principles and practices." 72 P.S. § 7301(a). Based on the definitional section, accepted accounting principles and practices must be consistent with the Department's regulations. 72 P.S. § 7301(a). Section 303(a.1) expressly authorizes the Department to take exception with a taxpayer's method where the Department "determines that no method has been regularly used or the method used does not clearly reflect income[.]" 72 P.S. § 7303(a.1). The Department's regulation prescribes that the methods used should fit the needs of the taxpayer, "so long as they clearly reflect income." 61 Pa. Code § 101.2. That specific regulation establishes a presumption that a particular method reflects income if it "reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with prevailing conditions or practices in that trade or business" and "if the method is used for Federal income tax purposes." 61 Pa. Code § 101.2.

In sum, Section 303(a)(3) identifies net gains or income from sale, exchange or other disposition of property as a relevant class of income subject to taxation. 72 P.S. § 7303(a)(3). The remaining provisions describe the calculation of income. Income is to be calculated using the method of accounting the taxpayer regularly uses, so long as it

clearly reflects income. 72 P.S. § 7303 (a.1). No one method of accounting is prescribed; the main requirements are that the method "clearly reflect income[,]" that it is appropriate for the relevant business, and that it not be inconsistent with the Department's regulations. 61 Pa. Code § 101.2, 72 P.S. § 7301(a). Aside from criticizing Taxpayers for deferring the reporting of income on like-kind exchanges, the Department lodges no other challenge to Taxpayers method of accounting. Thus, all of these requirements lead us back to the core question: whether "income" as defined in Section 303(a)(3) includes income realized from the sale of property in the context of a like-kind exchange.

**Taxpayers' arguments**

Taxpayers focus their arguments on the legitimacy of their method of accounting. They argue that the FIT method of accounting complies with Section 303(a)(3)'s requirement that personal income tax be calculated in accordance with "accepted accounting principles and practices." 72 P.S. § 7303(a)(3). According to Taxpayers, GAAP is one method of creating financial statements that must be followed by publicly traded companies, and the FIT method of accounting is a "standard basis of accounting for non-publicly traded companies, such as the real estate limited partnerships through which Taxpayers invest." Taxpayers' Brief at 18. They explain that the Public Company Accounting Oversight Board—the regulatory organization for publicly traded organizations—publishes auditing standards for public accountants and provide for two bases of accounting: GAAP and OCBOA. *Id*. at 16-17. According to Taxpayers, the FIT method of accounting qualifies as an OCBOA distinct from GAAP. *Id*. at 18.

They call upon the Pennsylvania Institute of Certified Accountants' amicus brief filed with the lower court, which indicates that "the FIT method of accounting clearly reflects income under the [Pennsylvania personal income tax] statutes." *Id*. Taxpayers surmise that GAAP allows deferral more often than the FIT method of accounting allows

it. *Id*. at 19. Therefore, they argue, it is absurd for the Department to reject gain deferral as part of the FIT method of accounting. *Id*. at 19. They also rely on a report prepared for the United States House of Representatives indicating that gain deferral "does not distort income." *Id*. at 19-20 (citing H.Rep.No. HR 73-704 (I.R.S.) at 15 (1934)).

Taxpayers then argue that the FIT method of accounting is consistent with Section 301(a) and Regulation 101.2 and therefore is presumed to clearly reflect income. *Id*. at 20. Taxpayers discern two "elements" from Section 301(a): that the principles and practices be "accepted by the accounting profession" and "consistent with the Department's regulations setting forth such principles and practices." *Id*. They then point to the relevant regulations and argue that pursuant to 61 Pa. Code § 101.2, the FIT method is presumed to clearly reflect income because it meets the three applicable elements:

1. it is applied consistently;

2. it reflects generally accepted accounting principles in the taxpayer's trade or business in accordance with prevailing conditions and practices; and

3. it is used for federal income tax purposes.

*Id*. at 23 (citing 61 Pa. Code § 101.2). Taxpayers state that the FIT method is presumed to state income and to modify that presumption, the Department would have to amend its regulations. Taxpayers' Brief at 15. In sum, they argue that the Department stipulated that Taxpayers satisfied each of the three elements of Section 101.2 and therefore, the Department must presume that the FIT method clearly reflects income. *Id*. at 25.

In support of their interpretation of Regulation Section 101.2 as controlling, Taxpayers call upon Section 1933 of the Statutory Construction Act, addressing general

and specific provisions in statutes.[20]  They characterize Section 303(a.1) as the "general rule" allowing the Department to disagree with the taxpayer's computation of income, and they view Regulation Section 101.2 as the controlling "specific exception" to the general rule with a mandatory presumption applicable in this case.  Taxpayers' Brief at 43 (citing 61 Pa. Code § 101.2, 72 P.S. § 7303(a.1)).

Taxpayers assert that the Department and Commonwealth Court ignored the mandate of the regulation.  Taxpayers' Brief at 31.  They accuse the Department of "overrid[ing] the general statutory rule that a taxpayer's accepted principles apply[.]" Taxpayer's Brief at 14.  They fault the Commonwealth Court for "substitut[ing] its own view of what clearly reflects income instead of applying the plain language of the regulation." *Id*. at 31.

Taxpayers further argue that Regulation Section 101.2 does not create a rebuttable presumption.  Taxpayers' Reply Brief at 5-6 (citing *Commonwealth v. Sherbaugh*, 2018 WL 4141432 (Pa. Super. 2018) (non-precedential decision)).  They compare the phrase "shall be presumed to clearly reflect income" of Section 101.2 to "shall be deemed" in *Sherbaugh*.  These similar phrases, according to Taxpayers, "signal that the burden of proof does not shift once the elements of the regulation are satisfied." Taxpayers' Reply Brief at 6.  Taxpayers then argue that, having established the elements of Section 101.2, "the Department **must** presume that Taxpayers' method of accounting clearly reflects income." *Id*. at 7.

Taxpayers argue that the Department acknowledged that the FIT method of accounting was consistent with Regulation Section 101.2 in Bulletin 2006-07.  They urge

---

[20]  1 Pa.C.S. § 1933 (providing that "the two shall be construed, if possible, so that effect may be given to both[,]" and that, if the conflict is irreconcilable, "the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail[]").

the Court to consider Bulletin 2006-07 as evidence of the Department's practice, rehashing the Commonwealth Court dissenting opinions indicating that "Taxpayers are entitled to the benefit of the Department's opinion at the time[]" of Bulletin 2006-07. Taxpayers' Brief at 27 (*Pearlstein I*, 267 A.3d at 607-09 (Crompton, J., dissenting)). They acknowledge that, pursuant to Department regulation 61 Pa. Code § 3.4, Bulletin 2006-07 is "not to be relied upon or used in tax appeals." *Id*. at 26. They also argue against giving any deference to the Department's current interpretation in this scenario, *id*. at 33-34, and against any consideration of the Revised Bulletin, *id*. at 36-37. Further, Taxpayers argue that the 2022 amendment explicitly incorporating Section 1031 in Section 303(a.5) reflects a clarification of existing law and not a clear change in the law. *Id*. at 39 (citing *Synthes USA HQ., Inc. v. Commonwealth*, 289 A.3d 846, 878 (Pa. 2023)).

Next, Taxpayers argue that the Commonwealth Court's interpretation of Section 303(a.1) is erroneous. More specifically, they recognize that Section 303(a.1) permits the Department to disagree with a taxpayer's method of computing income in limited circumstances that are not met here. Building on their previous arguments, they reiterate their position that the Department was bound by the presumption that Taxpayers' FIT method of accounting clearly reflects income, given that they met Section 101.2's three requirements. Taxpayers' Brief at 27-30 (citing 61 Pa. Code § 101.2).

Taxpayers attempt to distinguish the *AMP* case relied on by the Commonwealth Court. Whereas the Commonwealth Court relied on *AMP* for the proposition that the federal taxation scheme is inapplicable in Pennsylvania, Taxpayers maintain that "numerous principles of federal law" are incorporated into the TRC. *Id*. at 41 (citing *AMP*, 593 A.2d at 1). Further, Taxpayers explain that the lower court here ignored the regulatory definitions of "accepted accounting principles and practices[,]" whereas the

*AMP* court applied a regulatory definition of "compensation." *Id*. at 41 (citing 61 Pa. Code §§ 101.1, 101.2).[21]

**Department's argument**

Focusing on the statutory language of Section 303(a), the Department emphasizes that "[a]mong th[e] classes of income are '[n]et gains or net income … derived from the sale, **exchange** or other disposition of property, including real property.'" Department's Brief at 22 (citing 72 P.S. § 7303(a)(3)) (emphasis added by the Department). The Department cites regulatory language indicating that a taxpayer realizes a net gain from the conversion of real property in the year in which it is received. *Id*. (citing 61 Pa. Code §§ 101.7(a), 103.13). Further, it stresses that the TRC explicitly incorporated certain federal exceptions from net gains, such as for sale or exchange of a taxpayer's principal residence, 72 P.S. § 7303(3)(vii), 26 U.S.C. § 121; for exchange of corporate stock to a corporation controlled by the transferor, 72 P.S. § 7303(3)(iv), 28 U.S.C. § 351; and for gain resulting from investment in an opportunity zone, 72 P.S. § 7303(3)(viii), 26 U.S.C. § 1400Z-2. Department's Brief at 23. However, the TRC in 2013 and 2014 did not include an exception for like-kind exchanges of real property. *Id*. Thus, the Department urges the Court to "'listen attentively … to what [the statute] does not say.'" *Id*. at 24 (citing *Kmonk-Sullivan v. State Farm Mut. Auto Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001)).

The Department argues that the legislative silence is particularly meaningful here, where the General Assembly's past attempts to incorporate Section 1031 failed. *Id*. at 24. Moreover, the Department asserts the law presumes that the amendment made in

---

[21] Taxpayers also assert, but do not develop, an argument that the Department's position "is a fundamental violation of Due Process." Taxpayers' Brief at 42 (citing U.S. Const. amend. VIX, § 1). They maintain that the Department's position was contrary to the regulatory framework and contrary to Bulletin 2006-07, and that it was unfair "to purport to take a new position through revenue information … after the applicable period of tax accounting has passed." *Id*.

2022 to recognize the federal income deferral rule in Section 1031(a)(1) was designed to effect a substantive change in the law. *Id*. In support, they cite to *Masland v. Bachman*, 374 A.2d 517 (Pa. 1977), where we stated that "[a] change in the language of a statute ordinarily indicates a change in legislative intent." Department's Brief at 24 (citing *Masland*, 374 A.2d at 521).

Calling upon principles of federalism, the Department draws attention to the fact that taxing power is statutorily based. *Id*. at 25 (citing *Appeal of H.K. Porter Co.*, 219 A.2d 653, 654 (Pa. 1966); *Curtis' Estate*, 6 A.2d 283, 284 (Pa. 1939)). The Department cites *AMP* and various other cases for the proposition that the federal tax scheme is inapplicable in Pennsylvania personal income tax. *Id*. (citing, inter alia, *AMP*, 593 A.2d at 3 (explaining that the federal tax scheme is inapplicable in Pennsylvania because, "[a]s a sovereign, the Commonwealth can impose its own scheme of taxation"); *Tool Sales & Serv. Co., Inc. v. Commonwealth*, 637 A.2d 607, 611 (Pa. 1993) ("federal principles do not apply to our tax law")).

The Department explains that Taxpayers turn to the regulations because they are unable to identify any provision expressly incorporation Section 1031. The Department maintains that the regulations, read together with the TRC, require that any method utilized clearly reflect income. Department's Brief at 26. The Department acknowledges that Section 101.2 sets forth a presumption that certain methods of accounting clearly reflect income. However, unlike Taxpayers, the Department characterizes Section 101.2 as setting forth a mandatory **rebuttable** (as opposed to conclusive) presumption, *id*. at 28 (citing *City of Pittsburgh v. WCAB*, 67 A.3d 1194, 1204 (Pa. 2013); *Commonwealth v. Childs*, 142 A.3d 823, 831 n.9 (Pa. 2016)), and it maintains that it rebutted the presumption. For one, the FIT method cannot be an acceptable method for calculating Pennsylvania personal income tax, given that IRC has not been imported wholesale into

the TRC. Instead, Taxpayers' "accounting method requires adjustments to 'create state income financial data that is acceptable to the Department.'" Department's Brief at 29 (citing *Pearlstein I,* 267 A.3d at 605 (relying on expert reports)). The Department maintains that the fact of these adjustments, which must be made to comply with Pennsylvania law, proves that the presumption of Section 101.2 is rebutted. *Id*. (citing 62 P.S. § 101.2).

The Department also argues that every taxpayer uses the FIT method for purposes of filing federal tax returns. *Id*. at 29 (stating that "[a]ll taxpayers who file federal tax returns use a fundamental method of accounting, such as the cash or accrual basis, then adjust the financial data to reflect the provisions of the IRC to prepare the federal return[]"). Treating the FIT method as an accepted accounting principle and practice would in effect allow taxpayers to incorporate all IRC provisions into the TRC. *Id*. It is not an acceptable accounting method, but instead "a recapitulation of income as discerned by applying the IRC." *Id*. (internal citation omitted).

The crux of the Department's argument is that the FIT method of accounting's incorporation of Section 1031 deferral is inconsistent with the TRC. The Department emphasizes that the regulations establish that, "when a taxpayer realizes a net gain from the like-kind exchange of real property, those gains are taxable in the year that the exchange occurred." *Id*. at 30 (citing 61 Pa. Code §§ 101.7(a), 103.13).[22] Given that the

---

[22] Section 101.7(a) provides as a general rule: "An amount, the privilege of receiving which is taxable, shall be considered as received in the year in which it is actually or constructively received unless includable for a different year in accordance with the method of accounting of the taxpayer." 61 Pa. Code § 101.7(a). The remainder of Section 101.7 addresses the application of the accrual method of accounting and the cash receipts and disbursements method of accounting. The Department relies only on language indicating that the amount shall be considered received in the year in which it is actually or constructively received, and it does not address the qualification for the method of the taxpayer. Department's Brief at 22. Section 103.13 addresses net gains or income from disposition of property and provides that "[a] gain on the disposition of (continued…)

General Assembly did not incorporate Section 1031 explicitly,[23] and because income must be calculated based on Sections 101.7 and 103.13, the FIT method of accounting is inconsistent with Pennsylvania law. *Id*. at 30. The Department asserts that it has rebutted the presumption of Section 101.2 by demonstrating that the FIT method does not "clearly reflect income." *Id*.

The Department, like the Commonwealth Court, insists that Bulletin 2006-07 and the Revised Bulletin provide the same guidance: the TRC does not permit deferral on gains from like-kind exchanges. Department's Brief at 31. The Department admits that Bulletin 2006-07 recognizes the theoretical possibility that a taxpayer's method of accounting may allow deferral of reporting of gains on like-kind exchanges, "but only when the GAAP method of accounting is used." *Id*. Citing to a 2006 article regarding state conformity with Section 1031, the Department asserts that GAAP provides for a "very narrow" exception pursuant to which "'virtually all real estate exchanges[] will fail to qualify for deferred treatment for purposes of Pennsylvania [personal income tax].'" *Id*. at 31-32 (citing Louis S. Weller & Gregory A. Marques, *State Tax Conformity with Section 1031*, 34 REAL ESTATE TAXATION 4 (2006) (internal citations omitted)) (emphasis omitted). According to the Department, Bulletin 2006-07 advised that "only GAAP would satisfy 61 Pa. Code § 101.2 because GAAP generally recognized gain from a like-kind exchange (with few exceptions)." *Id*. at 32-33. Given Taxpayers' use of the FIT method of accounting, they could not defer the gains on the like-kind exchange of real property. *Id*. at 33.

property is recognized in the taxable year in which the amount realized from the conversion of the property into cash or other property exceeds the adjusted basis of the property." 61 Pa. Code § 103.13(a).

[23] The Department emphasizes that the General Assembly did not incorporate Section 1031 into the TRC. Department's Brief at 22-23.

Finally, the Department emphasizes that its regulations establish an "order of precedence:" (1) regulations; (2) statements of policy; (3) letter rulings; and (4) revenue information. *Id*. at 34. The Department states that Bulletin 2006-07 is "information material" under 61 Pa. Code § 3.4. *Id*. Even if it could be read to permit any method of accounting, the information material cannot overrule the mandate of the TRC or the regulations requiring that the method utilized must clearly reflect income. *Id*.

**Analysis**

Regardless of whether a real estate transaction is a traditional sale or an exchange for like-property, a gain realized from the transaction is income. As previously described, in a like-kind exchange, the taxpayer benefits from the sale of a property and avoids liquidating the return on her investment by reinvesting in a new property. *N. Cent. Rental & Leasing, LLC,* 779 F.3d at 741 (stating that the like-kind-exchange exception serves to avoid taxing individuals who do not "[l]iquidate or 'cash in' on their original investments in trade or business property"). The taxpayer actually realizes income at the time of the exchange, not later. However, Section 1031 of the IRC creates an exception to the general rule, and it provides that the taxpayer may defer the reporting of income in these scenarios.[24] In adopting tax deferral for like-kind exchanges, Congress created an exception allowing deferral for recognition of gains or losses where the property owner does not "cash in" on their property sale in the traditional sense. As the United States

---

[24] Courts have speculated that Congress' purpose in adopting this exception was to "avoid the imposition of a tax on those who do not 'cash in' on their investments in trade or business property." *Starker v. United States*, 602 F.2d 1341, 1352 (9th Cir 1979). They also surmise that members of Congress were concerned that taxpayers would not have the cash to pay a tax on the capital gain or that there was difficulty in valuing property exchanged. *Id*. *See also Ocmulgee Fields, Inc.*, 613 F.3d 1360, 1364-65 (11th Cir. 2010) (recognizing that the rationale for the like-kind exchange exception is that the taxpayer's economic interests undergo minimal change through the transaction because theoretically, the taxpayer's economic interest remains virtually unchanged by the transaction).

Supreme Court explained in *Cottage Savings Ass'n v. Commissioner*, 499 U.S. 554, 566 (1991), Congress understood that, absent Section 1031, exchanges of similar properties would be "realization events" for purposes of federal taxation.  Absent Section 1031, a taxpayer's gain from a like-kind exchange is taxable as income.  The same holds true in Pennsylvania.  The income is taxable under the TRC just as it would be under the IRC absent the exception.  Thus, the implicit assumption underlying Taxpayers' arguments—i.e., that as a general proposition, there is no realization of income at the time of the original sale—is inaccurate.

Given that gains from exchanges of property are income, Taxpayers only plausible argument is that the TRC contains an implicit exception to the definition of income for like-kind exchanges.  Significantly, our rules of statutory construction indicate that "[e]xceptions expressed in a statute shall be construed to exclude all others."  1 Pa.C.S. § 1924.  At the times relevant to this dispute, there was no exception to the definition of income in the TRC for like-kind exchanges.  However, there were exceptions expressed in the statute for the taxpayer's principal residence, 72 P.S. § 7303(3)(vii), for exchange of corporate stock to a corporation controlled by the transferor, 72 P.S. § 7303(3)(iv), and for gains resulting from investment in a federally-designated "opportunity zone," 72 P.S. § 7303(3)(viii). These enunciated exceptions operate to exclude all others, including an exception for like-kind exchanges.  1 Pa.C.S. § 1924.  Any other conclusion adopting an exception not provided in the text of the TRC would run afoul of the principle that, in construing statutes, we listen attentively to what a statute says as well as what it does not say.  *Kmonk-Sullivan*, 788 A.2d at 962.  Therefore, following the principles of statutory construction that require us to pay close attention to the words of a statute and to limit

exceptions to the expressly provided, we find that the TRC does not include an exception for like-kind exchanges of real property.[25]

To benefit from the federal tax exception for like-kind exchanges, taxpayers must undertake certain steps to comply with the legal requirements of Section 1031. For instance, taxpayers are required to structure their exchange to avoid cashing out—they must not sell their first property for cash and reinvest the cash in like-kind property. *Starker*, 602 F.2d at 1352. Taxpayers' Specimen Exchange Agreement illustrates this point. Its ten-pages of technical language is additional to the purchase agreement for their property. It details the necessities of a Section 1031 like-kind exchange, including that Taxpayers engaged a specific Section 1031 limited liability corporation to conduct the exchange. Specimen Exchange Agreement at 1, ¶ 7 (agreeing to pay the "qualified intermediary fees"). Engaging in the elaborate procedure does not actually transform the gains; the gains are still income. The procedure merely allows the taxpayer to avail herself of the statutory exception under the IRC. Without Section 1031, gains from the sale, exchange, or other disposition of property are reported as income at the time they occur because they occur "from the conversion of the property into cash or other property exceed[ing] the adjusted basis of the property." 61 Pa. Code § 103.13. It is the availability of deferral pursuant to Section 1031—as opposed to anything organic—that incentivizes taxpayers to engage in the elaborate procedures to structure sales of property as like-kind exchanges of property.

---

[25] Taxpayers insist that their position encourages investment in the real estate market, which may be true, but it is not within this Court's authority to rewrite the TRC for the relevant periods to adopt an exception to the definition of income merely based on policy. That was the purview of the General Assembly.

We acknowledge that the deferral principles enshrined in Section 1031 have become firmly entrenched in federal law and the laws of many states.[26] However, they became entrenched through the adoption of express laws.[27] Some states have incorporated the internal revenue code's calculations for adjusted gross income for individuals and taxable income for corporations, trusts, estates and partnerships, like Arizona. Ariz. Rev. Stat. § 43-102 (A). Others expressly incorporate Section 1031, like Alabama and California. Ala. Code § 40-18-8 (c); Cal. Rev. & Tax. Code § 24941. Likewise, the Pennsylvania General Assembly incorporated Section 1031 in 2022 after the tax years relevant to this appeal.[28] Tellingly, we have not identified a court in any

---

[26] The approaches to "federal-state tax conformity" are the subject of enthusiastic scholarly discussion. *See* Michelle D. Layser, Tax (Dis)conformity, Reverse Federalism, and Social Justice Reform, 53 Seton Hall L. Rev. 413, 417–18 (2022) (citing Jared Walczak, *Toward a State of Conformity: State Tax Codes a Year After Federal Tax Reform*, TAX FOUND. FISCAL FACT NO. 631 3-4 (Jan. 28, 2019), https://taxfoundation.org/state-conformity-one-year-after-tcja); Nicole Kaeding, *Does Your State's Individual Income Tax Code Conform with the IRC?* Tax Found. (Dec. 13, 2017) available at https://taxfoundation.org/data/all/federal/state-individual-income-tax-code-conform-federal-tax-code/ (last visited 6/13/2024).

[27] *See, e.g.,* Ala. Code § 40-18-8 (c) (providing that "If an exchange of property satisfies the requirements of 26 U.S.C. § 1031, relating to like-kind exchanges, then the amount of gain or loss recognized in the exchange shall be determined in accordance with 26 U.S.C. § 1031"); Alaska Stat. § 43.20.021(a) (providing that Sections 26 U.S.C. §§ 1 – 1399 are adopted by reference and have full force and effect); Ariz. Rev. Stat. § 43-102 (A) (adopting the provisions of the federal internal revenue code relating to the measurement of adjusted gross income for individuals and taxable income for corporations, trusts, estates and partnerships); Arkansas, § 26-51-411(c) (providing that no gain or loss shall be recognized on exchanges of real, personal, or mixed property for any other like property of similar value); Cal. Rev. & Tax. Code § 24941 (providing that "Section 1031 of the [IRC,] relating to exchange of property held for productive use or investment, shall apply, except as otherwise provided"); N.J. Stat. § 54A:5-1 (c) (providing that "net gains or net income" does not include gains or income from transactions to the extent to which nonrecognition is allowed for federal income tax purposes").

[28] In this respect, we acknowledge that "[a] change in the language of a statute ordinarily indicates a change in legislative intent." *Masland*, 374 A.2d at 521; *see* Act of July 8, 2022, P.L. 513, as amended 72 P.S. § 7303(a.5). However, we do not need to consider the legislative changes to understand the clear meaning of the TRC. *See* 1 Pa.C.S. § (continued…)

jurisdiction incorporating an exception for like-kind exchanges without express legislative adoption.

Moreover, the Department convincingly points out that every taxpayer initially uses the "FIT method" for purposes of filing federal tax returns. Department's Brief at 29. As the Department explains, all taxpayers who file federal tax returns start with a fundamental method of accounting, such as the cash or accrual basis, and then they "adjust the financial data to reflect the provisions of the IRC to prepare the federal return." *Id.* Treating the FIT method as an accepted accounting principle and practice would in effect allow taxpayers to incorporate all IRC provisions into the TRC. *Id.* It is not an acceptable accounting method, but instead "a recapitulation of income as discerned by applying the IRC." *Id.* (internal citation omitted).

Underlying Taxpayers' argument—that because the FIT method is legitimately used in the real estate business it therefore reflects income—is an assumption that the FIT method is a method of accounting that accurately reflects income **in Pennsylvania**. This argument ignores that it is the General Assembly's prerogative to define income, and income is defined differently in each taxing jurisdiction. It is well-established that in Pennsylvania, "the power to tax is statutory and must be derived from an enactment of the General Assembly." *Northwood Const. Co v. Twp. of Upper Moreland*, 856 A.2d 789, 796 (Pa. 2004); *Coolspring Stone Supply, Inc. v. Cnty. of Fayette*, 929 A.2d 1150, 1154 (Pa. 2007) (same); *Appeal of H.K. Porter*, 219 A.2d 653, 654 (Pa. 1966) (same). More to the point, "the sovereign power of taxation, except that part of it ceded to the United States, is in the state[.]" *Curtis' Estate*, 6 A.2d at 284.

---

1921(c) (providing that, when there is ambiguity in a statutory interpretation, courts may find guidance in legislative history).

In fact, the "FIT method" is a calculation of income used for federal tax purposes. *See* Duffy Report, ¶ 60 ("FIT is a basis of accounting derived from the laws and regulations that define the measurement and timing of income used for Federal tax purposes."). Taxpayers cite to other authorities recognizing the OCBOA to lend credibility to their argument that the FIT method of accounting is a legitimate method used in their real estate business. Indeed, even the Commonwealth Court reached a preliminary conclusion that "Taxpayers are not prohibited from using the FIT method of accounting, because that method is regularly used in the real estate development business, and Taxpayers have used and continue to use this method of accounting in their business." *Pearlstein I*, 267 A.3d at 605-06. But these sources do not suggest that, by virtue of applying a certain method of accounting, one can incorporate federal definitions and taxation principles to replace the rules of the Pennsylvania tax code. As the Commonwealth Court highlighted, the experts' testimony established that Taxpayers utilize the FIT accounting method to prepare their taxes and, critically, this method "requires adjustments to 'create state income financial data that is acceptable to the [Department].'" *Pearlstein I*, 267 A.3d at 603-04 (citing Joint Stipulation of Facts, 7/6/2020, ¶¶ 18-19 and Meyers Report at 8). The Department's expert explained the mechanics of Taxpayers' accounting and tax preparation: Taxpayers' method requires the accountant to first prepare the federal income tax return by incorporating federal income tax adjustments. Then, the accountant "incorporates state income tax adjustments … [to] create state income financial data[.]" Meyers Report at 8. "A separate set of books is not required for the preparation of the state tax return; however, additional adjustments [beyond those necessary for federal income tax purposes] may be needed." *Id*. Taxpayers' emphasis on their use of accepted accounting principles and methods

must be understood in the context of the fact that they are utilizing a method and procedure that requires adjustments to accurately reflect income in Pennsylvania.

Finally, Bulletin 2006-07 does not convince us otherwise. The dissenting judges thoughtfully expounded on how the Department's own Bulletin 2006-07 suggested approval of gain deferral. *See, e.g., Pearlstein I*, 267 A.3d at 607 (Crompton, J., dissenting). Also, the Department admits that Bulletin 2006-07 recognizes the theoretical possibility that a taxpayer's method of accounting may allow deferral of reporting of gains on like-kind exchanges. However, the Department insists that Bulletin 2006-07 was limited to situations in which the GAAP method of accounting is used, and even under the GAAP method of accounting, the Department attests that such scenarios are exceedingly rare. Department's Brief at 31. According to the Department, because Taxpayers used the FIT method of accounting, this exception is inapplicable and even if the exception applied to the FIT method, the exception is so narrow that it could not apply to the present circumstances. To the extent the Department argues that Bulletin 2006-07 recognized an exception for those taxpayers using GAAP only, it is advancing two contrary statutory constructions. Either an accounting method utilizing exceptions for deferral for like-kind exchanges can exist in this statutory scheme and nonetheless "clearly reflect income" or it cannot. The Department's effort to read Bulletin 2006-07 as establishing a narrow exception is not compelling, because any exception for deferral of a like-kind exchange would be contrary to its construction of the statutory and regulatory scheme.

Nonetheless, based on our statutory interpretation set forth above, we ultimately agree with the Department that Bulletin 2006-07 did not establish an exception for like-kind exchanges. Contrary to the Department, we are not convinced that utilization of the GAAP method would justify incorporation of the federal like-kind exchange exception when the exception was not already adopted in the TRC. Instead, we emphasize that,

as provided in the Department's own regulations, informational materials aim to "call attention to Department procedures or to well established interpretations or principles of tax law without applying them to a specific set of facts. … Revenue information material is issued for informational purposes only and should not be relied upon or used in tax appeals." 61 Pa. Code § 3.4. Moreover, in the hierarchy of interpretation, where conflicts exist, statutory language controls above regulations and revenue information. 61 Pa. Code § 3.5 ("If there appears to be a conflict between documents within the Revenue Information System, the order of precedence shall be as follows: (1) Regulations. (2) Statements of policy. (3) Letter rulings. (4) Revenue information.").

Both the statutory framework and the regulatory framework referenced in the definitional section, 72 P.S. § 7301(a), channel the Department's discretion in approving certain methods of accounting. Section 303(a.1) provides for the Department to ensure that the method utilized clearly reflect income,[29] and the regulation indicates that taxpayers are to adopt the methods of accounting best-suited to their needs, "so long as they clearly reflect income." 61 Pa. Code § 101.2. Taxpayers accurately point out that the regulation creates a presumption: a method of accounting is presumed to clearly reflect income if it "reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with prevailing conditions or practices in that trade or business" and "is used for Federal income tax purposes." *Id*. Ultimately, though, we agree with the Department that this is a mandatory rebuttable presumption rather than a mandatory conclusive presumption, because "[n]othing in the language of the provision suggests that the presumption is not rebuttable[.]" *Childs*, 142

---

[29] "If the department determines that no method has been regularly used or the method used does not clearly reflect income, the computation of income shall be made under a method which, in the opinion of the department, clearly reflects income." 72 P.S. § 7303(a.1).

A.3d at 830, n.9. Otherwise, the regulation would have the effect of allowing Taxpayers to import exceptions and income calculations from the IRC which is contrary to the intent of the General Assembly which did not adopt the IRC.[30]

Further, we find that the Department rebutted the presumption that the FIT method of accounting clearly reflects income with regard to like-kind exchange deferral because the TRC does not allow deferral of realization of gains for like-kind exchanges.[31] Taxpayers' method of accounting, though regular and generally accepted, cannot incorporate unique principles of the internal revenue code into the Pennsylvania tax code, particularly where they are inconsistent with the plain language of the TRC defining income.

In conclusion, having established that net gains from sale, exchange or disposition of property constitutes income, and that the TRC in the relevant year did not explicitly establish an exception or deferral principle for net gains from like-kind exchanges, we affirm the order of the Commonwealth Court.

Justices Wecht and Mundy join the Opinion Announcing the Judgment of the Court.

Justice Dougherty files a concurring opinion.

---

[30] In reaching the contrary conclusion, the Dissent focuses on 61 Pa. Code § 101.2, which it interprets as creating a mandatory conclusive presumption in favor of Taxpayers. Dissenting Op. at 4 (McCaffery, J.). However, even assuming this interpretation of the regulation is correct, it impermissibly elevates the status of a regulation, 61 Pa. Code § 101.2, above the plain language of the statutory provisions, 72 P.S. §§ 7303(a)(3), 7303(a.1). The regulations and Department Bulletin may not be used to undercut the clear statutory language which recognizes no exception for like-kind exchanges. *See* 1 Pa.C.S. § 1921(c)(8) (providing for consideration of legislative and administrative interpretations of a statute only "[w]hen the words of the statute are not explicit").

[31] Given that our interpretation harmonizes these provisions, there is no need to consider whether one is the specific or general pursuant to Section 1933 of the Statutory Construction Act, which comes into play only when there is an irreconcilable conflict. *See* 1 Pa.C.S. § 1933.

Justice McCaffery files a dissenting opinion in which Chief Justice Todd joins.

Justice Brobson did not participate in the consideration or decision of this matter.